UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH J. BELLET,

                              Plaintiff,

v.

CITY OF BUFFALO, et al.,

                              Defendants.

_____

**DECISION AND ORDER**

03-CV-00027(M)

In accordance with 28 U.S.C. §636(c), the parties have consented to proceed before a Magistrate Judge [125].[1] Before me are plaintiff's amended motion for a default judgment as to defendant Maureen McNamara [114] and motion for recusal [134]. For the following reasons, I order that plaintiff's motions for a default judgment [114] and for recusal [134] be granted in part and denied in part.

**BACKGROUND**

Plaintiff commenced this 42 U.S.C. §1983 action *pro se*. According to plaintiff, defendant Maureen McNamara is an employee of Mid-Erie Counseling Service. Amended Complaint [4], ¶6. Since the age of six, Jerome Walsh, Jr., was in plaintiff's lawful care and custody. Id., ¶15. On January 13, 2000, Jerome minor did not return from his school. Id., ¶15. The next morning he called defendant Rita Eisenbeis, the school's principal, who advised him to come to the school with documentation that he was Jerome's legal guardian. Id. When plaintiff arrived at the school, he had a confrontation with defendant Antonio Borrelli, a City of Buffalo

---

[1]       Bracketed references are to the CM/ECF docket entries.

Police Officer, which resulted in his arrest. Id., ¶16. At that time, "a Child Protection worker was at the school and asked the plaintiff where do you want us to take Jerry . . . I told the worker to take Jerry to Ms. Kaiser who helped me raise Jerry. Mrs. Eisenbeis said 'You can't take him to her, she is Mr. Bellet's girlfriend.' Without my permission or knowledge Ms. McNamara took Jerry to an unknown location across the City." Id., ¶18.

Thereafter, Jerome's father petitioned for custody of the boy. Id., ¶20. When plaintiff "went to the Family Court to resolve this problem, Officer Borrelli and Maureen McNamara appeared after having a meeting of the minds with the other named defendants connected to the school and influenced the Court to try me for neglect. The trial went through the whole summer, each defendant (from the school) had conspired with Borrelli to perjure themselves to deprive me of a Family relationship. Testifying that Jerry was 'a Waif, was dirty, ragged, had no winter clothes, was starving and terrified of his custodial parent' (the plaintiff). This was a conspiracy to deprive the plaintiff of my 5th and 9th amendment right and done under color of law. I was found not guilty of anything in Family Court". Id.

As a result of this conduct, plaintiff alleges that defendants violated his rights under the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments (first cause of action) and asserts a variety of state law claims (second cause of action). Id., ¶¶28 and 31.

## ANALYSIS

A.   **Motion for Default Judgment**

Defendant McNamara was personally served with the Amended Complaint [33]. Plaintiff then filed a Second Amended Complaint [61], which was not served on McNamara.

To date, McNamara has not appeared.[2] Therefore, plaintiff obtained a clerk's entry of default against McNamara for her failure to answer the Complaint or Amended Complaint [112 and 113].[3] Plaintiff now moves for a default judgment against McNamara in the amount of $60,000 [107].[4]

Obtaining a default judgment is a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55(a). Thereafter, a judgment by default may be entered upon application. *See* Rule 55(b).

Unlike a clerk's entry of default, the entry of a default judgment is discretionary. "Default judgments are disfavored, as there is a clear preference for cases to be adjudicated on the merits. . . . Nonetheless, default judgment is an appropriate sanction for 'defaults that arise from egregious or deliberate conduct.' . . . . In considering whether to enter a default judgment, courts consider (1) the merits of the plaintiff's claim and the existence of a meritorious defense, (2) the willfulness of the default, and (3) the possibility of prejudice to the plaintiff if default is

---

[2] I noted in my November 19, 2009 Text Order that "despite the reference in defendants' answer to the second amended complaint to defendant McNamara [70], defendants' counsel acknowledged on the record at today's proceeding that defendant McNamara has not appeared in this case" [111].

[3] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." International Controls Corp. v. Vesco, 556 F. 2d 665, 668-669 (2d Cir. 1977), cert. denied, 434 U.S. 1014 (1978). However, "until served, a pleading or motion has no effect". Johnson v. Ledwin, 2008 WL 4147251, *2 (W.D.N.Y. 2008) (Foschio, M.J.), Report and Recommendation Adopted, 2008 WL 4280095 (W.D.N.Y.2008) (Arcara, J.). Thus, while the Second Amended Complaint is the operative pleading, I have treated plaintiff's motion as seeking a default judgment under the Amended Complaint.

[4] Because of McNamara's failure to appear, plaintiff's motion for a default judgment was not required to be served on her. *See* Rule 5(a)(2) ("No service is required on a party who is in default for failing to appear").

not granted." 1st Bridge LLC v. 682 Jamaica Ave., LLC, 2009 WL 301941, *1 (E.D.N.Y. 2009). *See* 10 Moore's Federal Practice §55.31[2] (3d ed. 2010) ("In exercising its discretion whether to grant a default judgment, the court may consider any appropriate factors").

### 1. The Merits of Plaintiff's Claim Against McNamara

"Prior to entering default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment." Garden City Boxing Club, Inc. v. Giambra, 2004 WL 1698633, *1 (W.D.N.Y. 2004) (Skretny, J.). "Once default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." Id.

Plaintiff alleges that defendant McNamara made false allegations of abuse against him, which impacted his custody of the minor. As discussed in my July 2, 2009 Report and Recommendation [105], which was adopted by Judge Skretny [106], plaintiff has a protected liberty interest in preserving the family unit he established with Jerome. Accepting the allegations of the Amended Complaint as true, I find that plaintiff has stated a meritorious due process claim against defendant McNamara. Therefore, I find that this factor weighs in favor of granting plaintiff's motion.

### 2. Willfulness of the Default

Despite being served with the Amended Complaint on May 30, 2007 [33], defendant McNamara has failed to appear or respond in this case for over three years. The

duration of her default precludes excusable neglect as an explanation for her failure to appear. See Cablevision of Southern Conn., Ltd. Partnership v. Smith, 141 F. Supp. 2d 277, 282 (D. Conn. 2001) ("Given Smith's notice of the action and his continued failure to appear, answer or otherwise respond to the complaint for over two years since its filing, Smith's delay in answering the complaint cannot be the result of a good-faith mistake or excusable neglect"). Therefore, this factor also weighs in favor of granting plaintiff's motion.

### 3. Prejudice to Plaintiff if a Default Judgment is Not Granted

Plaintiff has not made a strong demonstration of prejudice aside from delay. However, "a strong showing of prejudice is not required for default judgment where . . . the evidence clearly shows willful default and the absence of a meritorious defense". Gladys Music v. Ed Smith Prods., 1994 WL 705265, *2 (N.D.N.Y. 1998).

On balance, I find that the factors discussed above weigh in favor of granting plaintiff's motion. Therefore, I order that judgment be entered as to defendant McNamara's liability.

### 4. Judgment as to Damages

Plaintiff requests that judgment be entered in his favor in the amount of $60,000 and has submitted a supplemental affirmation attempting to quantify these damages. Plaintiff's Motion [1-7], p. 1; Plaintiff's Supplemental Affirmation [118]. However, plaintiff's alleged damages cannot be readily quantified. "A claim does not become certain merely because the complaint or affidavit identifies a purported total." 10 Moore's Federal Practice §55.20[3] (3rd

ed. 2010). Therefore, I order that a damages inquest be deferred until the liability of the remaining defendants is resolved at the trial, which is currently set to commence on December 6, 2010. *See* Kidd v. Andrews, 340 F. Supp. 2d 333, 338 (W.D.N.Y. 2004) (Larimer, J.) ("'Where liability is joint and several, the entry of default judgment against fewer than all defendants in an action is proper, [but] a damages hearing may not be held until the liability of each defendant has been resolved'" *quoting* Dundee Cement Co. V. Howard Pipe & Concrete Products, Inc., 722 F. 2d 1319, 1324 (7th Cir. 1983)).

**B.     Motion to Recuse**

Plaintiff has unsuccessfully moved on two prior occasions to have Judge Skretny recuse himself in this case [5 and 11]. I also denied plaintiff's February 2009 motion seeking my recusal [98 and 102].

Following the denial of plaintiff's motion [132] to vacate my May 10, 2010 Decision and Order [130], which found that plaintiff had not demonstrated good cause to extend the deadlines of the Case Management Order in order permit him to identify the John Doe defendants, plaintiff filed a second recusal motion [134]. Because of plaintiff's *pro se* status, I have also treated his motion as seeking reconsideration.

"Any . . . magistrate judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). "This test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary . . . . In applying this test, we . . . ask whether an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt

that justice would be done absent recusal." In re Basciano, 542 F. 3d 950, 956 (2d Cir. 2008), cert. denied, 2009 WL 425177 (2009).

The Amended Complaint alleges that two unknown police officers used excessive force on him at the time of his arrest. Amended Complaint [4], ¶16. The Second Amended Complaint also alleges that while he was detained at police headquarters, defendant Borelli and two unidentified "white" police officers entered his home unlawfully. Amended Complaint [61], ¶15. The thrust of plaintiff's recusal motion stems from the fact that these four John Doe defendants have not been joined in the case. He also argues that defendant Buffalo Police Officer Teprovitch was improperly dismissed from the case. Plaintiff accuses me of

> "depriv[ing] this action of five (5) defendants all of who violated my rights pursuant to the U.S. Constitution. They are as follows: Two men (white men who searched my home and seized my property (a number of legal firearms) . . . . Two men Miller and Ganey who scared me permanently by dragging me through snow face down by the handcuffs behind my back . . . . Teprovitch put his hand on his gun and said 'Don't dare move!!' Then punched my daughter and knocked her down and tried to arrest me. . . . Judge Skretny took Teprovitch out of my complaint, but gave me permission to put him back in. But when I did this McCarthy made me take Teprovitch out or [*sic*] no reason."
> Plaintiff's Affidavit [134], ¶35.

Plaintiff's arguments directed at the failure to join the John Doe defendants overlook the fact that "it is not the responsibility of the Pro Se Office to provide plaintiffs with the names and addresses of the defendants which they sue". Paulson v. Doe, 1997 U.S. Dist. LEXIS 15733, *4 (S.D.N.Y. 1997). "The Second Circuit has held that *pro se* litigants proceeding *in forma pauperis* are entitled to rely on service by the U.S. Marshals Service. . . . However, plaintiff is required to provide the information necessary for the Marshals to effect

service." Gustaff v. MT Ultimate Healthcare, 2007 WL 2028103, *2 (E.D.N.Y. 2007), report and recommendation adopted, 2007 WL 2028104 (E.D.N.Y. 2007).

Plaintiff was also advised that he "will be permitted to proceed with his claim against the unidentified officer who allegedly grabbed and injured him, *provided Plaintiff can identify the officer through discovery*". Judge Skretny's November 18, 2004 Decision and Order, p.11 (emphasis added). He was also directed "to identify John Doe Defendants 'Four Unknown Buffalo Police Officers' through discovery as soon as possible, and then apply to this Court for an order directing amendment of the caption and service on the Defendants as soon as they have been identified". Id., p. 16; Judge Skretny's January 11, 2007 Decision and Order [14], p. 4. Despite these directions, plaintiff did not avail himself of the opportunity to attempt to identify the unknown defendants during the discovery phase of the case, and now attempts to use this failure as the basis for my recusal.

### 1. Officers Gainey and Miller

Recognizing his obligation to identify the John Doe defendants (at least initially), plaintiff requested certain discovery from defendants and reviewed his own documentation, which uncovered two police reports, an arrest/booking report indicating that Linda Ross was the arresting Officer and an arrest data report indicating that "Miller/Ganey" assisted Borelli in arresting plaintiff. Plaintiff's Supplemental Affirmation [51], Exs. A and B.[5]

---

[5] To the extent plaintiff argues that this discrepancy was due to "opposing counsel creat[ing] a false computer made arrest report", I find no basis for this claim. Plaintiff's Affidavit [134], ¶18. Consequently, I find no basis to plaintiff's claim that I "encourag[ed] further fraudulent practices" by not stopping counsel's fraud. Id., ¶20.

I then directed defendants' counsel to advise me whether these defendants were still employed by City of Buffalo Police Department. October 23, 2007 Text Order [55]. In response, defendants' counsel advised that Nathaniel Gainey and Jamie A. Miller remain active police officers and that there was also a female Officer on staff at the Police Academy, Barbara Miller-Williams. Plaintiff's Affidavit [134], Ex. F.

In reviewing defendants' employment records *in camera*, I learned that defendant Jamie Miller was a female, whereas the Second Amended Complaint identified her as a male. Therefore, I advised plaintiff of this at the December 19, 2007 status conference, and he confirmed that the individual involved in the incident was a male. Thus, I directed that the Second Amended Complaint not be served upon defendant Jamie Miller, as she was clearly not the proper defendant.

Defendants answered the Second Amended Complaint on behalf of defendant Gainey [70]. Despite Gainey being a party to this case since December 20, 2007, plaintiff now asserts that he is not the correct defendant. This is also contrary to plaintiff's recent representations at the May 5, 2010 proceeding, where he conceded that defendant Gainey was the proper defendant. May 10, 2010 Decision and Order [130], p. 3 n. 2. It being plaintiff's obligation to identify the correct defendants, I find no basis to recuse myself.

Similarly, I find no basis to recuse myself as a result of plaintiff's inability to identify the other arresting officer. Once he learned that defendant Miller was not the correct defendant, plaintiff had a number of discovery devices available to him to identify the correct defendant, including deposing defendant Gainey, but he failed to do so. This failure again falls upon plaintiff, not the court. I also find no basis to reconsider my earlier decision not to extend

the deadlines of the Case Management Order in order to permit plaintiff to identify the correct defendants. May 10, 2010 Decision and Order [130].

### 2. John Doe Defendants

To expedite the identification of the remaining John Doe defendants, I directed defendant Borelli to appear before me with any records concerning the identity of the other two remaining John Doe defendants. Plaintiff's Affidavit [134], Ex. D. At the October 22, 2007 proceeding, defendant Borelli advised that he did not recall the officers who assisted with plaintiff's arrest, other than that they were two African American males, and that he could not recall the officers who entered plaintiff's home. Id., Ex. C. Defendant Borelli stated that the only other records that could identify these officers were the 911 records. However, Erie County later advised that the 911 information related to the arrest (audio tape and report) were no longer available.[6]

Having exhausted reasonable efforts at assisting plaintiff in identifying the John Doe defendants, it was then incumbent on plaintiff to conduct discovery to identify these defendants. Therefore, I find plaintiff's failure to identify the John Doe defendants provides no basis for me to recuse myself.

### 3. Officer Teprovitch

The Amended Complaint [4] alleges that:

---

[6] A copy of this correspondence is appended to this decision.

> "officer Teprovitch refused to give me my property and was very
> threatening putting his hand on his pistol the officer shouted
> 'Don't you dare move!' The officer can [sic] into an outer hall
> and struck my step daughter . . . and then grabbed me in violation
> of my right against unlawful siezure [sic] stating that I was under
> arrest. My back was twisted causing much pain since" [4], ¶22.

Judge Skretny interpreted these allegations as asserting a claim against Officer Teprovitch for verbally harassing plaintiff, and as asserting a different claim against an unknown Buffalo Police Officer for grabbing and injuring him. [10], p. 11. He dismissed Officer Teprovitch with prejudice, reasoning that threats of use of force do not amount to a constitutional violation, but permitted plaintiff to "proceed with his claim against the unidentified officer who allegedly grabbed and injured him, provided Plaintiff can identify the officer through discovery". Id.

Plaintiff promptly moved to recuse Judge Skretny and to "reconsider [his] complaint". Plaintiff's Affidavit [11], "Wherefore" clause. Among the grounds for this motion was that "Officer Teprovitch came out of the property room and struck my step daughter and hurt me in trying to falsely arrest me and that's clear in spite of a typo." Id., ¶18. Judge Skretny denied plaintiff's motion without discussing this argument. January 11, 2007 Order [14].

After defendants Gainey and Miller were identified as two of the four John Doe defendants, I granted plaintiff leave to amend his Amended Complaint to name these defendants. November 15, 2007 Text Order. However, plaintiff's Second Amended Complaint also asserted claims against Officer Teprovitch [61]. Therefore, I directed plaintiff to show cause why Officer Teprovitch should not be dismissed from the Second Amended Complaint. December 10, 2007 Text Order [62]. In response to the order to show cause, plaintiff stated "it

was obvious to me that the judge mis-read the complaint as there was only one officer (Teprovitch) which did both things threatened me and came out to the hall and struck (Tracy) . . . and then grabbed me, twisting my back and hurting me". [72], ¶3.

Since I lacked (at that time) the authority to reconsider Judge Skretny's prior dismissal of Officer Teprovitch, I ordered that "leave was not granted to add defendant Teprovitch, who had previously been dismissed from this case with prejudice by Hon. William M. Skretny . . . . Therefore, notwithstanding the fact that Teprovitch is named in the Second Amended Complaint . . . , he is not a party to this action, at this time". December 28, 2007 Text Order [73].

Plaintiff now argues that "Judge Skretny took Teprovitch out of my complaint, but gave me permission to put him back in. But when I did this McCarthy made me take Teprovitch out or [*sic*] no reason". Plaintiff's Affidavit [134], ¶35. However, it does not appear that Judge Skretny ever gave plaintiff permission to add Officer Teprovitch as a defendant. Nevertheless, based upon the allegations of the Amended Complaint and the arguments which plaintiff previously made to Judge Skretny, it appears to me that Officer Teprovitch should not have been dismissed from the case, since plaintiff was alleging not only that he threateneed to use force against plaintiff, but that he actually did so.

Since the dates of Judge Skretny's decisions with respect to Officer Teprovitch, the parties have consented to have me handle the entire case. Therefore, whereas I previously lacked the authority to revisit Judge Skretny's decisions, I now act effectively as the district judge, and therefore have that authority. "Under the express terms of Rule 54(b) . . . an interlocutory judgment is 'subject to revision at any time before the entry of judgment

adjudicating all the claims and the rights and liabilities of all the parties.' . . . . Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." Acha v. Beame, 570 F.2d 57, 63 (2d Cir. 1978); Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F. 2d 1245, 1255 (2d Cir.1992), cert. denied, 506 U.S. 816, 820 (1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment"); Cusamano v. Sobek, 604 F. Supp. 2d 416, 435 (N.D.N.Y. 2009) ("The Court possesses the inherent authority to *sua sponte* reconsider its own orders before they become final"). Therefore, I order that Officer Teprovitch be added as a defendant, and that the claims of excessive force alleged against him (Second Amended Complaint [61], ¶20) remain in the case.

The fact that I have reconsidered an earlier ruling of this court does not warrant my recusal. *See* In re United States, 441 F. 3d 44, 67 (1st Cir.) cert. denied, 549 U.S. 888 (2006) ("A judge's rulings . . . rarely provide a basis for recusal under §455(a) . . . . That principle applies even to misjudgments").

### 4. Other Arguments for My Recusal

Plaintiff argues that I am not "of sound mind" because I stayed the case for only two months while he was recovering from cancer. Plaintiff's Affidavit [134], ¶¶11 and 12. However, when this issue was raised at the May 10, 2007 proceeding, plaintiff expressly agreed to adjourn the case until August 22, 2007. Before resuming with the litigation, I inquired about plaintiff's condition and asked him if he required an additional stay to which he responded,

"No, I will fight the case until I drop".[7]   Therefore, I do not find that this claim warrants my recusal.

Plaintiff also argues that I was "Judge Skretnys' [*sic*] second choice" and "that at no time did I sign any agreement to this!!" Plaintiff's Affidavit [134], ¶9 and 10. However, under 28 U.S.C. §636(b)(1), district judges have the authority to refer pretrial matters to magistrate judges regardless of the positions of the parties on such referrals.  Significantly, plaintiff also ignores that despite being aware of all the conduct he now complains of, he voluntarily consented to me handling the case, including presiding over the trial.  Therefore, I find that this claim does not warrant my recusal.

As set forth in my prior decision denying plaintiff's recusal motion, "litigants are entitled to an unbiased judge; not to a judge of their choosing. A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." In re Drexel Burnham Lambert Inc., 861 F. 2d 1307, 1312 (2d Cir. 1988), rehearing denied, 869 F. 2d 116 (2d Cir. 1989), cert. denied, 490 U.S. 1102 (1989). As there is no basis for my recusal, I may not "stand down".

**CONCLUSION**

For these reasons, I order that the plaintiff's motion for a default judgment is granted to extent that it seeks a judgment in favor of plaintiff as to defendant McNamara's liability and that a damages inquest be deferred until the conclusion of the trial.  I also order

---

[7] From the digital audio recording of the August 22, 2007 proceeding.

that plaintiff's recusal motion [134] be granted to the extent it seeks reconsideration of Officer Teprovitch's dismissal, but otherwise be denied. Upon reconsideration, I order that Officer Teprovitch be added as a defendant, and that the claims of excessive force alleged against him (Second Amended Complaint [61], ¶20) be reinstated.

A status conference concerning service of the Second Amended Complaint on Officer Teprovitch, and the viability of the currently scheduled trial date, will be held on September 17, 2010 at 10:00 a.m. The parties may participate via telephone upon advance notice to chambers. The court will initiate the call.


DATED:    September 8, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge